NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                        :
THE GUARANTEE COMPANY OF                :
NORTH AMERICA USA,                      :
                                        :
             Plaintiff,          :  Civil Action No. 09-5399 (JAP)
   v.                                   :
                                        :  **OPINION**
SBN ENTERPRISES, INC.,                  :
CHRISTAKIS KARAMANOS,                   :
CHRISTALLO KARAMANOS, AND               :
THE KARAMANOS IRREVOCABLE               :
FAMILY TRUST,                           :
                                        :
             Defendants.         :
_____:

PISANO, District Judge.

Before the Court is Plaintiff The Guarantee Company of North America USA's ("GCNA") motion for partial summary judgment against Defendants SBN Enterprises, Inc. ("SBN"), Christakis Karamanos and Christallo Karamanos (collectively, the "Indemnitors"), and The Karamanos Irrevocable Family Trust (the "Trust"). The motion is unopposed. For the following reasons, the Court will grant the motion.

**I.    BACKGROUND**

SBN is a construction contracting business that performs work in connection with public and private construction projects. In 2001, to obtain surety bonds from GCNA on behalf of SBN, as principal, the Indemnitors executed an Agreement of Indemnity (the "Indemnity

Agreement") in favor of GCNA, as indemnitee.[1]  Pursuant to the Indemnity Agreement, the Indemnitors agreed to indemnify GCNA from losses and expenses incurred as a result of the issuance of the surety bonds on behalf of SBN.  SBN breached several of its bonded obligations for which GNCA was the surety.  As a result, GCNA incurred losses and expenses consistent with its bonded obligations, including satisfaction of claims on the bonds, as well as consultants' and attorneys' fees.  The Indemnitors, however, failed to reimburse GCNA for its losses and expenses.

The Indemnity Agreement also provided that Indemnitors must deposit with GCNA, as collateral security, an amount equal to any reserve established by GCNA related to the surety bonds issued on behalf of SBN.  GCNA demanded such a deposit, but Indemnitors failed to make the deposit.  In addition, Indemnitors conveyed real property located at 1235 Jasam Court, Toms River, New Jersey (the "Property") to the Trust for one dollar, after one of the Indemnitors was put on notice by GCNA of some of the claims asserted under the SBN surety bonds.  The market value of the Property was appraised at $725,000.

On October 23, 2009, GCNA commenced this action by filing its Complaint with the Court in which GCNA seeks, among other things, the deposit of collateral and reimbursement of losses and expenses from Indemnitors as set forth in the Indemnity Agreement, as well as a judgment voiding the conveyance of the Property from Indemnitors to the Trust.  By May 14, 2010, it appeared that the matter had been settled by the parties and the Court dismissed the action without prejudice.  Settlement, however, was not consummated and the Court reopened the case on July 13, 2010, following an unopposed motion to reopen filed by GCNA.  On

---

[1]  At the time of the issuance of the surety bonds, GCNA was named Atlantic Alliance and Surety Company.  Its name changed to The Guarantee Company of North America, USA in 2002.

2

December 7, 2010, GCNA filed the instant motion for partial summary judgment. The motion is unopposed.

## II.     STANDARD OF REVIEW

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court must determine whether disputed issues of material fact exist, but the court cannot resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In determining whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Stephens v. Kerrigan,* 122 F.3d 171, 176-77 (3d Cir. 1997). The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has met its opening burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* at 324. Thus, the non-moving party may not rest upon the mere allegations or denials of its pleadings. *Id.* "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has demonstrated to the court the absence of a material fact at issue, the Supreme Court has stated that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts...." *Matsushita,* 475 U.S. at 586-87 (citations omitted).  In other words, "[i]f the evidence [submitted by the non-moving party] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted).

The Supreme Court has specifically recognized that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses, and [ ] that [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex,* 477 U.S. at 323-24.  Thus, "[w]hen the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment must be entered for the moving party." *Turner v. Schering-Plough Corp.,* 901 F.2d 335, 341 (3d Cir. 1990).

**III.   DISCUSSION**

Agreements to indemnify are "interpreted in accordance with general principles of contract law." *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 317 (3d Cir. 2006); *Englert v. The Home Depot*, 911 A.2d 72, 77 (N.J. Super. Ct. App. Div. 2006). Under New Jersey law, "where the terms of a contract are clear . . . the court must enforce it as written." *Cnty. of Morris v. Fauver*, 707 A.2d 958, 969 (N.J. 1998).  On motions for summary judgment, the courts have routinely enforced indemnity agreements that are similar to the Indemnity Agreement at issue in this case.  *See, e.g., U.S. Fidelity & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579 (M.D. Pa. 1998), *aff'd*, 185 F.3d 864 (3d Cir. 1999); *Safeco Ins. Co. v. DeMatos*

4

*Enterprises, Inc.*, 2003 WL 21293825 (E.D. Pa. 2003); *Travelers Cas. and Sur. Co. of America, Inc. v. Jadum Constr., Inc.*, 2003 WL 21653368 (D. Mass. 2003).

In this case, the clear and unambiguous language of the Indemnity Agreement obligates the Indemnitors to indemnify GCNA from losses, costs, and expenses incurred in connection with the bonds issued by GCNA.  The agreement provides, in relevant part:

> [The Indemnitors] hereby agree, jointly and severally, to exonerate, indemnify, keep indemnified, reimburse and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses, investigative fees and expenses, accountants' fees and expenses, other professional or consultants' fees and expenses of any kind, in-house attorneys' fees and expenses, interest, court costs and any and all other types of losses, costs or expenses of whatsoever kind or nature, and from and against all such losses and/or expenses as hereabove indicated which the Surety may sustain and/or incur, and which arise by reason of or in any manner in consequence of, no matter how remotely; the execution or procurement by the Surety of any Bond(s) on behalf of the Principal(s); the failure of the Principal(s) and/or any of the Indemnitor(s) to perform or comply with any or all of the terms, covenants and conditions of this Agreement.

O'Mahony Aff. ¶6, Exh. A (Docket Entry no. 31).  As detailed above, GCNA incurred losses and expenses consistent with its bonded obligations, including demands on the bonds, as well as consultants' and attorneys' fees.  According to the plain language of the Indemnity Agreement, the Indemnitors must pay GCNA for these losses and expenses.

Pursuant to the Indemnity Agreement, the Indemnitors also agreed that:

> an itemized statement of the amount(s) of any such payment(s) signed by an officer or authorized representative of the Surety . . . shall be prima facie evidence of the fact and the amount(s) of such payment(s), and the extent of the liability of the Principal(s) and the Indemnitor(s) to the Surety, and shall be final, conclusive and binding upon the Principal(s) and the Indemonitor(s) in any claim, suit or other proceeding by the Surety to recover the amount(s)mof such payment(s) pursuant to this Agreement or otherwise.

*See* O'Mahony Aff. ¶9, Exh. A.  Courts have previously held that such *prima facie* evidence clauses in indemnity agreements are valid and enforceable, *see Fallon Elec. Co., Inc. v.*

5

*Cincinnati Ins. Co.*, 121 F.3d 125, 129 (3d Cir. 1997), and the Court similarly recognizes the clause in the Indemnity Agreement at issue.  In this case, GCNA has submitted an itemized statement in an affidavit by Gregory O'Mahony, GCNA's Vice President and Managing Claims Attorney, that Indemnitors owe GCNA $837,464.13.  O'Mahony Aff. ¶¶10-32.  Accordingly, the Court will enforce the terms of the Indemnity Agreement and enter partial summary judgment in favor of GCNA and against the Indemnitors for contractual indemnification in the amount of $837,464.13.

Also in the Indemnity Agreement is an agreement by the Indemnitors to post collateral with GCNA in the amount of the reserve established by GCNA.  Specifically, the Indemnity Agreement requires that the Indemnitors, "immediately upon demand, deposit with the Surety a sum of money equal to such reserve(s), and any increase thereof, as collateral security on such Bond(s)."  O'Mahony Aff., Exh. A (Section IX).  By way of letter to the Indemnitors on July 29, 2009, GCNA demanded the posting of collateral equal to its reserves, in the amount of $1,003,284.21.  *See* Compl., Exh. B.  The Indemnitors failed to deposit such collateral with GCNA.

Collateral for surety bonds is distinguishable from an award of indemnification; collateral, based on reserves set up relating to certain bonds, is intended to protect the surety from future liability and anticipated losses rather than claims that have already been asserted.  *See* Compl., Exh. B (explaining rationale behind demand for collateral); *see also American Motorists Ins. Co. v. United Furnace Co., Inc.*, 876 F.2d 293, 300-02 (2d Cir. 1989) (explaining why collateral is necessary for surety reserves).  As such, specific performance is appropriate in cases where such collateral has been demanded.  *See id.*  Accordingly, the Court will enforce the

Indemnity Agreement and enter an order compelling the Indemnitors to deposit with GCNA collateral in the amount of $1,003,284.21.

Finally, GCNA contends that the Indemnitors' transfer of the Property to the Trust was a fraudulent conveyance intended to keep the Property from being accessed by creditors.  Under the Uniform Fraudulent Transfer Act ("UFTA"), N.J.S.A. 25:2-20, *et seq.*:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> >
> > b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. 25:2-25.  "The purpose of the [UFTA] is to prevent a debtor from placing his or her property beyond a creditor's reach. . . .  Fraudulent conveyance claims thus allow the creditor to undo the wrongful transaction so as to bring the property within the ambit of collection. *Gilchinsky v. Nat'l Westminster Bank of N.J.*, 732 A.2d 482, 488 (N.J. 1999) (internal citations and footnotes omitted).

To determine whether a conveyance was fraudulent, a court conducts two primary inquiries: (1) "whether the debtor or person making the conveyance has put some asset beyond the reach of creditors which would have been available to them at some point in time but for the conveyance"; and (2) "whether the debtor transferred property with an intent to defraud, delay,

7

or hinder the creditor." *Id.* at 488-89 (internal citations and punctuation omitted). "[T]he confluence of several [factors that are listed in N.J.S.A. 25:2-26] in one transaction generally provides conclusive evidence of an actual intent to defraud." *Id.* at 490. These factors are:

>a. The transfer or obligation was to an insider;
>
>b. The debtor retained possession or control of the property transferred after the transfer;
>
>c. The transfer or obligation was disclosed or concealed;
>
>d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
>e. The transfer was of substantially all the debtor's assets;
>
>f. The debtor absconded;
>
>g. The debtor removed or concealed assets;
>
>h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
>i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
>j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
>k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.J.S.A. 25:2-26.

Here, the transfer of the Property included several of these factors. First, the transfer was from the Indemnitors to their family Trust, of which they were the sole beneficiaries, and therefore was a transfer to an "insider" consistent with N.J.S.A. 25:2-26(a). Second, the Indemnitors retained possession or control of the Property after the transfer consistent with N.J.S.A. 25:2-26(b), as they continue to reside at the Property. Third, the value received by the

Trust for the transfer, $1.00, *see* O'Mahony Aff. ¶¶37-39, Exh. B, was not reasonably equivalent to the value of the Property, which has been appraised at $725,000.00, *see id.* ¶44, Exh. E, consistent with N.J.S.A. 25:2-26(h).  Fourth, the transfer of the Property occurred only a few months after GCNA notified the Indemnitors of claims asserted under some of the bonds at issue, *see* O'Mahony Aff. ¶40, Exh. C, and a few weeks before GCNA notified the Indemnitors, by letter, of the substantial debt owed to GCNA under the Indemnity Agreement, *see id.* ¶42, Exh. D, consistent with N.J.S.A. 25:2-26(j).  Given that the Indemnitors' actions satisfy several factors that indicate fraud, the Court has ample support to find that the Indemnitors transferred the Property to the Trust with an intent to hinder GCNA's ability to recover its debt.  *See In re Truong*, 285 Fed. Appx. 837, 840 (3d Cir. 2008) (affirming district court's finding that fraudlent transfer occurred upon a finding of five factors).  Accordingly, the Court will void the transfer of the Property.

## IV.    CONCLUSION

The Court concludes that the plain language of the Indemnity Agreement controls so that the Indemnitors must reimburse and post collateral with GCNA as described above.  Further, it finds that there are enough indicators of intent to defraud that the Indemnitors' transfer of the Property to the Trust will be voided.  An appropriate order shall issue.

/s/ JOEL A. PISANO
United States District Judge

Dated: July 27, 2011

9